THE STATE, THOMAS D. HOXSEY ET AL., PROSECUTORS, v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON ET AL.

1. A *certiorari recited* the desire of the Supreme Court to be certified as to the employment of the individual defendant by the corporate defendant, and as to the bills of the former for services under that

employment, and of the proceedings of the latter in reference to such bills, but the writ expressly *commanded* only the certification of the bills and proceedings relating thereto. The return contained the resolution of employment, and the reasons filed denied the right to pay the bills, because of want of power in the corporation to employ the individual defendant. *Held*, that the legality of the employment was involved in the issue before the court.

2. The fact that services have been rendered to a municipal corporation, under a contract with it which it had no power to make, will give no legal right to compensation from it, and therefore furnishes no ground for refusing or dismissing a writ of *certiorari*, designed to test the legality of the contract.

3. The rule that a *certiorari* will not be allowed before a final decision is reached in the inferior tribunal, is confined to cases where the office of the writ is in the nature of that of a writ of error; it is not applicable to the writ when designed for the review of municipal proceedings, in which cases the time for its allowance is discretionary; and where discretion was rightly exercised in allowing the writ, a dismissal, on the ground that the writ was improperly allowed, will be reversed on error.

4. Where such dismissal is ordered on final hearing, the Court of Errors will not merely reverse the judgment below, but will render such judgment of affirmance or reversal of the proceedings brought up by the *certiorari*, as the Supreme Court should have given upon the merits.

5. The approval of a claim against the city of Paterson, by the department of finance, under the city charter, (*Pamph. Laws*, 1871, p. 808, ¿ 34,) is reviewable by *certiorari*.

In error to Supreme Court.

For opinion of Supreme Court, see *ante p.* 72.

For the plaintiffs in error, *T. D. Hoxsey.*

For the defendants, *A. B. Woodruff* and *B. Gummere.*

The opinion of the court was delivered by

DIXON, J.   The Supreme Court, at the instance of taxpayers of Paterson, awarded a writ of *certiorari*, directed to the mayor and aldermen of the city, by which, after reciting that the court desired to be certified of a certain employment of Absalom B. Woodruff as counsel for the city, by the committee on finance of the city, and of the proceedings confirm-

ing such employment, and of Mr. Woodruff's bills for services rendered under such employment, and of all the proceedings of said committee on finance and of the board of aldermen, relating to said employment and the payment of said bills, the city was commanded to certify and send to the court the said bills, and all the proceedings looking to the payment thereof, as such proceedings remain on file in the offices of the comptroller, collector and clerk of the city. As a return to this writ, the city certified and sent up the fact that on December 15th, 1873, the finance committee reported to the board of aldermen that, in view of the numerous suits pending against the city, they had resolved on a vigorous defence, and had, therefore, retained A. B. Woodruff, Esq., as associate counsel, and that, on motion, the action of the committee was endorsed by the board. The city likewise certified the bills of Mr. Woodruff, proceedings by which $1000 had been paid thereon, and the fact that, as to the balance, the board had referred the bills to the committee on finance, and that body had reported the same approved, and so signed by a majority of its members.

On this return, the prosecutors filed reasons for reversal, alleging, among other grounds, that the bills ought not to be paid, because there is a want of all legal power in the city to pay them, inasmuch as, by the charter, the city is to have one counsel, at a salary not exceeding $1500 per annum, and, at the time of Mr. Woodruff's employment, had such counsel, and therefore neither the finance committee nor the board of aldermen had legal power to appoint him as associate counsel.

On final hearing, the defendants moved to dismiss the writ, on the ground that no conclusive act or adjudication of the city was brought up for review. This motion the Supreme Court granted, and accordingly judgment was entered, dismissing the writ, with costs. That judgment is now, by writ of error, subjected to review in this court.

The opinion filed in the Supreme Court indicates that its decision was reached upon a consideration only of the question whether the action of the city authorities, which strictly

related to the payment of the bills, was so final in its nature as to be. proper for examination by *certiorari.* In this, I think, the court has overlooked an important part of the proceedings on which it was its duty to pass. As stated in that opinion, "the controversy sought to be raised in the cause is over the legal right of the corporation, under the provisions of the city charter, *to employ and pay,* for legal services such as are charged in the bill, any person other than he who for the time holds the office of city counsel." But this controversy, so far as it concerns the legality of the *employment,* seems to have received from the court no further attention than mere statement; and yet it exists in the cause in a form proper for decision. Although the mandatory words of the *certiorari* do not pointedly direct the defendants to certify the employment of Mr. Woodruff, yet the recitals of the writ express the desire of the court to be certified of that employment, and the defendants do send it up, and the prosecutors, in their reasons, clearly complain of its illegality, and make it the basis of their application for a prohibition of public expenditure. Under these circumstances, any vagueness in the command of the writ should not be regarded, except for amendment.

But it is said to be too late to question that employment, services having been in good faith rendered under it. If the objection urged by the prosecutors were only against the regularity of the mode in which a power to employ was exercised, such services might furnish a strong reason for the court's refusal to interfere. But the objection goes deeper, and attacks the very power of the corporation to make the contract. If this objection be good, the employé under such a contract acquires, by reason of his services, no legal claim for compensation against the municipality. In the language of Judge Dillon, (1 *Dillon on Mun. Corp.,* § 381,) "the general principle of law is settled, beyond controversy, that the agents, officers, or even city council of a municipal corporation, cannot bind the corporation by any contract which is beyond the scope of its powers. * * * The duties and

powers of the officers and public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. * * * It results, from this doctrine, that unauthorized contracts are void, and, in actions thereon, the corporation may successfully interpose the plea of *ultra vires.*" In such cases, since there exists no legal obligation on the part of the municipality, the taxpayer may, at any time before the actual illegal expenditure of public moneys, invoke the judgment of the court declaring the apparent contract void, to the end that the threatened injury of unlawful payment may be averted. This objection should, therefore, have been passed upon by the court below.

But within the narrower limits by which the opinion of the Supreme Court is confined, I think sufficient grounds appear for not dismissing the writ. The rule applied by that court is, that " it is not a proper use of the writ of *certiorari* to intercept and remove for review the steps in a procedure preliminary to a decision or final resolution therein, except when the court issuing the writ can continue the proceedings to completion." But this rule is not one of universal force. Its operation is properly confined to those cases where the office of the writ is in the nature of that of a writ of error, and when, therefore, its allowance is governed by similar principles. But in other cases, it is a discretionary writ, in the absence of any statute requiring it to be granted, and the time for its allowance, as well as other circumstances, is subject to that legal discretion. Where the object is to review municipal action, especially if that action is said to be beyond the corporate power, it is a frequent practice for the writ to go, while yet the final step that completes the injury is but threatened. *State, Danforth, pros., v. City of Paterson,* 5 *Vroom* 163 ; *State, Coar, pros., v. Jersey City,* 6 *Vroom* 404 ; *State Gaines, pros., v. Hudson County Avenue Commissioners,* 8 *Vroom* 12.

It is evident that if a taxpayer, seeking to prevent the unlawful payment of public moneys, must wait for the final resolution to pay, before interposing the efficacious obstacle

of a *certiorari*, he generally may as well abandon his laudable purpose at its inception. The interval between the order to pay and payment, especially if the payment be illegal, and therefore interference expected, is usually too slow for the dilatory process of the law. In the case in hand, the character of the claimant is such as to relieve the court from all apprehension of any attempt to evade a legal adjudication upon his right; but such personal considerations cannot be allowed to prevent the enforcement of general principles, and the courts are following the dictates of a sound policy when they are liberal in the use of their powers for the protection of the citizen against municipal extravagance. It appears that the bills in controversy had in part been paid by the corporation, and, as to the residue, had been approved by the department of finance, composed of the members of the finance committee of the common council, and with such approval reported to the council. This department of finance is not a mere subdivision of the council, exercising only such powers as that body commits to it, but it is a statutory organization, with independent powers conferred and defined by the charter, and these of no inconsiderable scope. The thirty-fourth section of the act for the government of the city (*Pamph. Laws*, 1871, *p*. 808,) provides that the fiscal affairs of the corporation shall be under the management and control of this department; that it shall prescribe the mode in which all creditors, officers and employés of the corporation shall be paid, and shall settle and adjust all claims in favor of or against the corporation, and that no bill incurred by any other department or officer, under the direction and control of the board of aldermen, shall be paid without the approval of the said department, except by a four-fifths vote of the board of aldermen. These enactments, I think, give to this body such dignity, and to its approval of a claim against the corporation, such force, as justify the court in inquiring whether the claim is one which the corporation may legally pay; for if it may not, this approval, which, at least, so advances it towards payment, should be annulled. The court ought not to await the

further order of the council, even if, which is not clear under the charter, that order be requisite before payment.

I am therefore of opinion that the Supreme Court rightly exercised its discretion in the allowance of the *certiorari*, and that its dismissal was, for that reason, erroneous, and should be reversed.

Upon this reversal, a question arises as to the proper practice in this court, whether the record should be remitted to the court below, that it may proceed to a judgment of affirmance or reversal of the corporate proceedings upon the merits, or this court should itself render such final judgment. The case shows that the cause was ripe for final hearing below, and that the judgment of dismissal was given upon such hearing. Under these circumstances, this court should not merely reverse the judgment below, but should also render the judgment which ought to have been there rendered, Says Chief Justice Hornblower, in *Garr* v. *Stokes et al.*, 1 *Harr.* 403 : " Without question it may now be considered the law of this court, that in all cases where a writ of error has been brought by the plaintiff below, if his errors are well assigned, he is entitled, not only to a judgment of reversal, but to such new judgment as, upon the record, it appears the court below ought to have rendered for him." The case just cited goes further, and adjudges that when the judgment below is erroneous, and hence is reversed, the appellate court should, nevertheless, render a different judgment against the plaintiff in error, if such judgment be required by the record ; and the following language from *Salk.* 401, is quoted with approval: "If an erroneous judgment be given for the defendant, and it is reversed, and the merits appear for the plaintiff, he shall have judgment. If the merits be against the plaintiff, the defendant shall have a new judgment, for they are to reform, as well as to affirm or reverse." This doctrine, asserted in the King's Bench so early as the first year of Queen Ann, and tending, as it does, to terminate litigation, should not, at this day, be restricted,

and its application to the present case evinces the power of this court to give such judgment as justice may demand.

At the hearing, counsel were confined to the discussion of the propriety of the dismissal of the writ. Hence the cause will stand over for final argument upon the merits.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DALRIMPLE, DIXON, SCUDDER, WOODHULL, CLEMENT, GREEN, LILLY, WALES.    9.